## In re HADDEN'S WILL.

*(Surrogate's Court, Westchester County. November, 1888.)*

1. WILLS—CONSTRUCTION—GENERAL LEGACIES.
   Where a testator owns bonds and stocks of various corporations, bequests in different sums to different legatees of "my" stocks and bonds at their par value, not describing them particularly, are general legacies; and it is the duty of the executors to make the selection of each legatee's bonds and stocks.

2. SAME—UNCERTAINTY.
   The fact that the stocks and bonds vary in value does not make the bequests void for uncertainty.

John Hadden, at the time of his death, owned 123 bonds and shares of stock in various corporations. Their market value ranged between $107.50 and $114 per share or bond; the par value being $100. He made the following bequest: "I give and bequeath to my said son Charles E. Hadden $4,000 in the stocks and bonds, out of any stocks or bonds that I may own at the time of my death, the same to be reckoned and counted at their par value." In substantially the same language, he gave $3,000 in stocks and bonds to his daughter Amanda C.; and also, in substantially the same language, he gave to his son Beverly W. the income of $3,000 in stocks and bonds for life. There was an application for a construction of the will.

*Arthur T. Hoffman*, for executors. *Henry Parsons*, for residuary legatees.

COFFIN, S. It is claimed on behalf of the residuary legatees that the clauses of the will under consideration are void for uncertainty, because the stocks and bonds vary in value, and that therefore the will cannot be carried into effect in this regard without interfering with the rights of the legatees. It is difficult to see any force in this objection. The persons of the legatees are pointed out with certainty, and the amount given to each is definite, and the manner in which each is to be satisfied is clearly indicated.

The real and important question, however, is, who has the right to select the bonds or stocks for each of the legatees,—the executors, or the legatees themselves? If the legacies are strictly specific, there could be no room for doubt. For instance, if he had said, "I give to Charles E. Hadden four thousand dollars in Vandalia bonds, which I own at the time of my death, at their par value," and so had pointed out the precise stocks or bonds he gave to each of the others, the legacies would have been specific, easily satisfied by the executors, and this question would not have arisen. It is true that it has been said that specific legacies are of two kinds; the *first*, where a certain chattel is particularly described and distinguished from all others of the same species, as: "I give the diamond ring presented to me by A." This legacy can be satisfied only by the delivery of the identical ring. The *second* is

where a chattel of a certain kind is bequeathed without any designation of it as an individual chattel, as: "I give a diamond ring." This may be fulfilled by the delivery of anything of the same kind. 2 Madd. Ch. Pr. 7, 8; Toll. Ex'rs, 301. But this distinction, as will be seen by reference to the authorities below cited, no longer prevails, and the only kind now recognized is that first above mentioned. The following doctrine measurably meets the facts of this case. A bequest of a sum of money, or of a sum in government securities, must be taken as a legacy of quantity, and is therefore a general legacy. This doctrine, it is said, prevails, notwithstanding the testator may have a greater or the exact quantity of the specific stock at the date of his will. *Bronsdon* v. *Winter*, Amb. 59. But the word "my" preceding the words "government securities, stock, or annuities," has been held, several times, sufficient to render the legacy specific. *Sibley* v. *Perry*, 7 Ves. 530. So, Chancellor KENT, in *Walton* v. *Walton*, 7 Johns. Ch. 258, held that a bequest in these words, "I give and bequeath to my nephew all my right, interest and property in thirty shares which I own in the 'Bank of the United States of America," was a specific legacy. In the case of *Robinson* v. *Addison*, 2 Beav. 515, where the bequest was of "five and a half shares in the Leeds & Liverpool Canal, and all benefit and advantage thereof," and the will contained two other bequests, of 5 shares each, in the same terms, and the testator, at the date of the will, owned 15½ shares of that stock, it was held that the legacies were general, and not specific, but that, if the testator had designated them as "my" shares, the legacies would have been specific; and, to the same effect, *Tifft* v. *Porter*, 8 N. Y. 518. The facts in this case are peculiar, for, although they plainly come within the principle laid down in Ambler, *supra*, and the other cases cited, yet the word "my" or its equivalent is used, but the bonds and stocks are not otherwise particularly described, as to whether they are bonds and stocks of any specific railroad or corporation; and another peculiarity distinguishing the case is that "my" bonds and stocks are those of various corporations, and are given in different sums to legatees at their par value, when there is a difference in their actual value. At all events, the bequests are not, under the decisions, specific. If they had been made so, there would have been no difficulty in satisfying them. But the question remains, how and by whom is the will, in this respect, to be executed? May it be done by the executors, by delivering to the legatees such bonds and stocks as they may select, amounting at their par value to the legacy given to each, or have the several legatees a right to select those they will receive? If it be claimed that the legatees have a right of election, then it is said in 2 Co. Litt. 145a, when an election is given to several persons, the first election made by any of the persons shall stand. But here no election is, in terms, given. In *Duckmanton* v. *Duckmanton*, 5 Hurl. & N. 219, A., having two closes in R., devised one, without specifying which, to his son John, who was the heir at law, and one to his younger son, George. It was held that John, as heir, had a right of election. Here, it would seem, the right of John to elect was based upon the sole fact that he was the heir. The case of *Jacques* v. *Chambers*, 2 Colly. 435, is substantially like this, except the legacies were declared to be specific. The testator bequeathed to A. the use for life of 30 shares, out of 120 he owned, in the stock of the Great Western Railway, with remainder to his wife and children, and 30 shares to B. There were two classes of shares, 38 having been originally subscribed for by the testator, and 82 having been purchased by him as scrip. There was difference in value of the two classes of shares in favor of the 38. The learned vice-chancellor, (BRUCE,) in delivering his opinion, said: "If the executors have the option of selecting the sixty shares, they may exercise that option by giving the sixty shares out of the eighty-two. * * * If, however, the legatees have the option, they would have the right to exercise it, and probably would exercise it, thus, namely, each legatee of the thirty shares would take nineteen of the thirty-

eight." In this view, that the legatees would probably exercise it by each taking one-half of the most valuable shares, there would arise this difficulty, especially in the case where there are three such legatees: They cannot make the selection simultaneously. Some one must make the first selection; and, unless he were utterly indifferent to self-interest, which we are scarcely at liberty to assume, he would doubtless take those which were regarded as most valuable. Then another would have to select from those which remained, and the third would be left to take the residue, without the opportunity of selection, if there were not more than sufficient to satisfy all; or, if there were, he would have to select from those already rejected by the others as least valuable. But the vice-chancellor also held that the legatee for life, as well as the other legatee, had that right. He failed, however, to indicate which legatee, if either, should first select. That matter was the subject of discussion in *Duckmanton* v. *Duckmanton, supra,* as we have seen; and the question was solved by giving the right to John, because he was the heir. Here, however, there is nothing known among us which will warrant the distinguishing of the legatees in this case from another. They all stand upon an exact equality, neither having any right or preference. The conclusion reached in the case in Collyer does not seem to be sound, because it appears to be impracticable in execution. The executors are appointed to execute the will,—to carry out the intention of the testator. They should deliver the stocks and bonds bequeathed at their par value; and, if any selections are to be made, they should make them in a manner that appears to be fair and equitable. It is unnecessary here to say whether their conduct in that regard may be subject to criticism on their final accounting.

Who shall make the selections is perhaps of little moment, when we consider that the subjects of the bequests are constantly fluctuating in market value, so that those of most value now may in a week hence take the place of those now esteemed of least value. But, seeing no way in which the legatees can, practically, select, it is considered the duty of the executors to perform that act, unless, indeed, a satisfactory solution of the difficulty may be effected by agreement between them and the legatees. Decree accordingly.